## WALTER OBORN, Respondent, v. WILLIAM R. NELSON, Appellant.

### Kansas City Court of Appeals, February 21, 1910.

1. **MASTER AND SERVANT: Negligence: Practice: Sufficiency of Evidence.** Plaintiff was in defendant's employ. His duties required him to work about a printing press. The press was operated by electricity, and it was started and stopped by electric buttons. Plaintiff stopped the machine to remove paper which had improperly wrapped around a roller. The machine suddenly started, injuring plaintiff's hand. Although there were several possible causes for this sudden action of the machine, yet under the evidence the jury were not compelled to resort to conjecture to make a finding that its starting was due to negligence on the part of the defendant.

2. ————: ————: **Duty of Inspection: Purchase From Reliable Maker: Notice of Defect.** There being evidence that the machine had suddenly started on prior occasions defendant owed plaintiff the duty to use reasonable care to remedy the defect. Defendant could not relieve himself of the duty of inspection by showing that the press was of standard make and of high quality, and the sufficiency of defendant's inspection was a question for the jury.

3. **APPELLATE COURTS: Jurisdiction: Amount of Judgment.** Plaintiff recovered a verdict of $8,500. As a condition precedent to overruling defendant's motion for a new trial the court below ordered a remittitur of $4,000. An appeal is taken from the judgment and not from the verdict, and therefore the court of appeals had jurisdiction.

4. **DAMAGES: Excessive Verdict.** Plaintiff, a young man, had one of his fingers torn away below the last joint, another was amputated at the second joint, another was left disfigured and stiff. One half the strength of his right arm was lost. In addition to his press work plaintiff had earned money as a musician. A judgment for $4,500 was not excessive.

5. **PLEADING: Variance.** Plaintiff's petition described him as a pressman. The evidence showed that he was in fact "first assistant tension man." He was performing his ordinary duties when injured. The difference between the petition and the evidence as to his official title was immaterial.

Appeal from Jackson Circuit Court.—*Hon. E. E. Porterfield*, Judge.

AFFIRMED.

*Warner, Dean, McLeod & Timmonds* for appellant.

(1) Defendant purchased a machine of standard make and daily inspected the same. He thereby performed his full duty. Little v. Head, 69 N. H. 494; 1 Labatt, Master and Servant, secs. 44, 153. The doctrine of *res ipsa loquitur* did not apply in this case. Breen v. Cooperage Co., 50 Mo. App. 202; Kremer v. Mfg. Co., 120 Mo. App. 247, 252; Deckard v. Railroad, 111 Mo. App. 117; O'Donnell v. Baumm, 38 Mo. App. 245. (2) A master is not liable for injuries caused by latent defects not discoverable by reasonable inspection. Current v. Railroad, 86 Mo. 62; Essex, etc., Co. v. Kelley, 29 Atl. 427; Throckmorton v. Railroad, 39 S. W. 174; Labatt, Master and Servant, secs. 126, 153; O'Donnell v. Baumm, 38 Mo. App. 245; Louisville, etc., Co. v. Allen, 78 Ala. 494. (3) A master must guard against dangers that are reasonably probable. Ray's Negligence of Imposed Duties, 133; Webb's Pollock on Torts, 45; Hysell v. Swift & Co., 78 Mo. App. 50; Brewing Co. v. Talbott, 141 Mo. 674. He is not bound to use more than ordinary care. Bennett v. Lumber Co., 116 Mo. App. 699; Hester v. Packing Co., 84 Mo. App. 454; Elliott v. Railroad, 67 Mo. 274; Covey v. Railroad, 86 Mo. 641; Pavey v. Railroad, 85 Mo. App. 221; Current v. Railroad, 86 Mo. 62; Breen v. Cooperage Co., 50 Mo. App. 202; Howard v. Railroad, 173 Mo. 531; Curtis v. McNair, 173 Mo. 270; Trigg v. Sand Co., 187 Mo. 227. (4) The mere fact that an accident happened because of a defective appliance cannot be taken as evidence of defendant's negligence. Railroad v. Kellogg, 55 Neb. 748. (5) No presumption of negligence on the part of the master arises or is shown from the mere fact of the accident. Blanton

v. Dold, 109 Mo. 64; Bohn v. Railroad, 106 Mo. 429; Pierce v. Kile, 80 Fed. 865; Stone Co. v. McCain, 133 Ind. 231; Reynolds v. Woolen Co., 168 Mass. 501; Redmond v. Lumber Co., 96 Mich. 545. (6) A plaintiff cannot by voluntary remittitur control the jurisdiction of the appellate court. Schantz v. Railroad, 46 Mo. App. 397. (7) Where the verdict is so excessive as to compel a conviction that the jury did not fairly weigh the evidence, the verdict should be wholly set aside. Creve Coeur Lake Co. v. Tamm, 90 Mo. App. 189; Partello v. Railroad, 217 Mo. 658; Taylor v. Railroad, 185 Mo. 239; Boggess v. Railroad, 118 Mo. 328; Zurfluh v. Railroad, 46 Mo. App. 636. (8) There was a variance between plaintiff's pleading and proof. Jones v. Louderman, 39 Mo. 287. And, where there is a fatal variance, or a failure of proof as to a material allegation, the point is raised and preserved by demurrer to the evidence, as was done in this case. Gaty v. Sack, 19 Mo. App. 470; Sisney v. Arnold, 28 Mo. App. 568; Trimble v. Stewart, 35 Mo. App. 537; Wallich v. Morgan, 39 Mo. App. 469; Gray v. Race, 51 Mo. App. 553; Singleton v. Railroad, 41 Mo. 466; State v. Myers, 82 Mo. 558; Gurley v. Railroad, 93 Mo. 445; Hite v. Metropolitan, 130 Mo. 132.

*Kelley, Brewster & Buchholz* for respondent.

(1) Defendant did not avail itself of its right to claim a variance. He filed no affidavit as required in such case. R. S. 1899, sec. 655; Harrison v. Lakenan, 189 Mo. 581; Bank v. Assurance Co., 106 Mo. App. 114; Turner & Collins v. Railroad, 51 Mo. 501; Wallich v. Morgan, 39 Mo. App. 469; Gaty v. Sack, 19 Mo. App. 470. (2) The verdict was not excessive. Phippen v. Railroad, 196 Mo. 348; Broyhill v. Norton, 175 Mo. 190; Rapp v. Transit Co., 190 Mo. 144; Dougherty v. Railroad, 97 Mo. 666; Stoltze v. Transit Co., 188 Mo. 581; Burdict v. Railroad, 123 Mo. 236.

JOHNSON, J.—This is an action for negligence. Trial by jury and a verdict for plaintiff for $8500. On hearing of motion for a new trial, the court held the verdict excessive and ordered a remittitur of $3500, as a condition to overruling the motion. Then plaintiff voluntarily filed a remittitur of $4000, the motion was overruled and judgment rendered for plaintiff in the sum of $4500. Defendant appealed.

The injury occurred April 29, 1907, in the press room of the newspaper plant owned and operated by defendant in Kansas City. Six large printing presses of latest type and of best construction were stationed in this room. The presses were run by electricity and were equipped with push buttons for the use of the operator in applying, stopping and regulating the power. One of these presses, known as No. 4, is the object of present concern. Plaintiff had been employed by defendant some six years and, at the time of his injury, was working at that press in the capacity of "first assistant tension man." His duties, as stated by him, were "to help lead the sheet through, watch the rollers, change the muslin, and put on the blankets and help lock up the rollers, sometimes we done that, and start and stop the machine, and when the press was continually running we had to run the tension, that was the most particular thing in my position."

When a roll of white paper was set in its place, a "lead" had to be started by running the end of the roll over a prescribed course through the machine. And after the lead was started the "tension" of the machine had to be watched and regulated in order that the lead or paper ribbon would run through without breaking. Either on account of some defect in the paper or on account of the "tension" being too tight, the paper occasionally would break and wrap around a roller. When this occurred, the machine had to be stopped, the roller cleaned of the clogging paper and a new lead started.

It was the duty of plaintiff to perform this task

and he was thus engaged when injured. The paper had broken, plaintiff had stopped the press, and had begun to clear away the paper wrapped around a roller when the machine suddenly started and as suddenly stopped, but not until plaintiff's right hand was caught between moving rollers and crushed. Plaintiff contends that what he describes as the sudden jumping of the machine was caused by some defect in the electrical appliance for controlling the power, while defendant argues that the cause of the injury is presented by the evidence as a thing of pure conjecture.

The press was eighteen or twenty feet long, eleven feet high, and nine feet wide. It had eight sets or "stations" of push buttons, each station consisting of five buttons. The stations, each 4x8 inches in size, were placed about the machine at the most convenient places for the operators. One button would start the machine gradually, another more rapidly, another would stop it quickly, and so on. One of the buttons, called the "safety," when set would lock the machine so that it would not respond to the action of any other button until the safety was released. The evidence of plaintiff is to the effect that he pushed a stop button, that the press came to a full stop before he began the work of cleaning the roller, that he set the safety button and that neither he nor any one else pushed any other button before the machine jumped and hurt him. Further, it appears that in the "jump" the rollers only moved eight or ten inches, that it would be impossible to move them so slightly by the use of the buttons; that the machine had been observed by other workmen to jump when the power was shut off and the safety set; that complaint had been made to the foreman and that the electrician had tinkered with the "stations" without remedial results.

In attempting to account for the injury, one of defendant's witnesses said: "He may have reached to put the safety in and pressed the wrong button.

That would be one way, and not looking for the press to start up he could have had his finger in the cylinder. and that drew it in. Then another way, he could have walked by to the cylinder and put his hand in before the press had really stopped. A press would—if it stopped on high speed, it would run from twenty to thirty revolutions before it stopped. It would be very easy for a man in a rush to walk the distance he did, it would be only three feet, one step, and put his hand in. And it could be that some of the other boys had started it when he was working there. That is three different ways it could have been done." And in argument counsel for defendant suggest the likelihood of an accidental contact between some part of plaintiff's body and a push button. But we find all of these theories positively negatived in the evidence of plaintiff.

In the posture of the case presented by the demurrer to the evidence, we must give full credit to the evidence of plaintiff, which shows that the press had stopped and the safety was set before he thrust his hand into the place where it was caught; that his body was too far from a station to make the inference that he accidentally touched a button anything but the most remote conjecture, and that nobody did touch any of the buttons.

The petition alleges that "Plaintiff was employed by defendant as a pressman" and that while he "was working on said press, the paper became caught between said rollers or cylinders and began to wrap around the same. That said pressman in charge of said press and under whom this plaintiff was at the time working, stopped said press and plaintiff started to tear away said paper. That while plaintiff was attempting to tear away said paper, said press suddenly started up, although none of said buttons had been pushed," etc.

The first point advanced in the argument of the

141 App.—28

demurrer to the evidence is that there is a fatal variance between the allegations and the proof of plaintiff, because the allegation is that plaintiff was a pressman and that "it was necessary for the pressman to tear the paper away with his hands," while the proof shows that plaintiff was not the pressman but the "first assistant tension man." By whatever name he was called, the allegation and proof show it was the duty of plaintiff to tear away the clogging paper and that he was in the performance of that duty when injured. A variance between petition and evidence is material only when it appears that there is a failure of proof as to one or more of the essential elements of the cause of action or that the defendant might have been misled to his detriment by the incorrect averment. It is the expressed design of the code, and it should be given full recognition by the courts, that inaccuracies in pleadings of no prejudicial effect should not be made a ground for the reversal of a meritorious judgment. The objection to the petition is too hypercritical to impress us.

We do not agree with defendant that the verdict finding negligence of defendant to have been the proximate cause of the injury must rest on conjecture and speculation. To the contrary, we find the evidence of plaintiff points directly and unequivocally to negligence. Obviously, the machine could not start without electricity. If plaintiff and his witnesses are to be believed (and we see no reason for discarding their testimony), the machine gave an eccentric and very brief start at a time when the buttons were pushed to shut off the power entirely. Such occurrence could result only from a slight and momentary short circuit caused by some defect in the appliance for control of the power. The rule is well settled that where the evidence of plaintiff discloses that the injury might have resulted from one of two or more causes and that some of such causes were disassociated from the neg-

ligence averred, there can be no recovery, since, necessarily the jury would be compelled to indulge in speculation to find the defendant guilty of negligence; but where, as here, the evidence of the plaintiff points directly to the alleged negligence as the sole cause of the injury, the burden of proof is sustained and the case should go to the jury. Defendant argues the claim that the machine jumped is an afterthought and refers to the admission of plaintiff that, at first, he thought the pressman had started the press by pushing a button. But plaintiff says he did not know the machine had jumped before and, as he was not versed in electrical science, it is not surprising that his mind should regard some human agency as the cause of the action of the press. The most that may be said of the admission is that the jury were entitled to weigh it with the other facts and circumstances of the case.

Further, it is contended that as the press was of standard make and of high quality and was inspected daily, defendant must be held to have discharged his full duty to plaintiff and cannot be held liable for negligence in failing to discover a latent defect. It sufficiently answers that argument to say that knowledge of defendant, either actual or constructive, that the machine was defective would deprive him of the right to rely on any presumption and would impose on him the duty to use reasonable care to remedy the defect. Moreover, the defect depicted by the evidence of plaintiff was not latent. True, the mechanism of the appliance controlling the power was hidden and it could not be told except by expert examination just what was causing the occasional short circuit, but the existence of a short circuit proclaimed in no uncertain manner the presence of a defect and was enough, of itself, to impel an ordinarily careful and prudent person in the situation of defendant to take prompt steps to discover and repair the specific defect. Referring to the contention that defendant did all he could do

when he had the machine inspected daily by an expert, we cannot give that evidence of defendant the conclusive effect claimed for it. The contention is fully answered when we say that the jury had the right to believe otherwise. No error was committed in overruling the demurrer to the evidence, nor do we find any substantial error in the rulings of the court on the instructions. The issues were correctly and fairly submitted.

Point is made that this court has no jurisdiction of the appeal since the amount of the verdict was in excess of our jurisdiction and plaintiff could not change the appellate forum by a voluntary remittitur. The point must be ruled against defendant. The appeal is prosecuted from the judgment, not the verdict, and the judgment was for $4500, an amount then and now within our jurisdiction.

Finally, it is argued that the judgment is still excessive and that the size of the verdict denotes passion or prejudice on the part of the jury. Plaintiff is a young man. The injury maimed his right hand and left it permanently impaired. One of the fingers was torn away below the last joint, another was amputated at the second joint; another was so mashed it always will be disfigured and stiff. At least one-half the strength of the right arm is lost. In addition to his regular employment, plaintiff played musical instruments as an avocation and thereby added materially to his income. Considering the age and earning capacity of plaintiff at the time of his injury, the serious and lasting impairment of his usefulness; his disfigurement and the pain, suffering and humiliation he has endured and will suffer, we do not feel justified in saying that the judgment is excessive. In Phippin v. Railroad, 196 Mo. 321, the plaintiff lost all the digits of his right hand except the thumb. The Supreme Court ordered a remittitur of $3000 from a verdict of $12,000, allowing a judgment to be entered for $9000. The

opinion says: "When the nature and character of plaintiff's vocation in life is considered, the loss of his right hand was tantamount to a permanent deprivation of the means of earning a livelihood." The injury in the present instance is but a little less serious than that considered by the Supreme Court and we regard that case as authority for our ruling that the judgment is not excessive.

Finding no substantial error in the record, the judgment is affirmed. All concur.